# Richmond

## Nationwide Mutual Insurance Company v. Marie Tuttle.

June 12, 1967.

Record No. 6430.

Present, All the Justices.

*Arthur G. Lambiotte (Daniel W. Wilkinson, Jr.; Ford, West &*
*Wilkinson,* on brief), for the plaintiff in error.

*C. Harper Anderson* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

William and Marie Tuttle, husband and wife, and tenants by the entireties of certain property in Charles City County, Virginia, entered into a contract on June 13, 1964, with Robert Branscombe (Contractor) whereby Branscombe agreed to erect a concrete retaining wall on their property. After the wall was built, Charles E. Brown, a truck driver, in the course of his employment for Contractor, backed a dump truck towards the wall for the purpose of filling the space between the wall and the earthen bank with dirt. The truck, which had a "trailer hitch" on its back, skidded backwards, bumped into the wall, and the wall was cracked. The Tuttles refused to pay Contractor the full contract price for erecting the wall until the wall had been properly restored.

The Contractor, who carried a policy of liability insurance with Nationwide Mutual Insurance Company, reported the accident to A. L. Jameson, Jr., local agent of the Insurance Company. Jameson thereupon wrote a letter to the Tuttles, sending a copy to Contractor, in which he said Mr. Branscombe is covered by the above policy, and "if your wall should fall within a reasonable period of time, due to Mr. Branscombe's actions, we will honor the claim. One year from this date."

Relying upon the letter and the policy, the Tuttles paid $2,000.00 to Robert Branscombe, which they had withheld from his contract price because of the damage to their wall. Shortly thereafter, William Tuttle died, and Mrs. Tuttle became the entire owner of the propertry.

Within two months from the time that the wall was repaired by the Contractor, and after the Tuttles had paid the $2,000.00 to him, the wall fell. Mrs. Tuttle notified the Insurance Company, whereupon the company denied coverage and liability.

Mrs. Tuttle then obtained a civil warrant in the James City County Court against Contractor, seeking $2,000.00 damages. The Insurance Company was notified of the proceeding; but did not appear or de-

fend the action. The James City County Court entered judgment in favor of Mrs. Tuttle against Contractor for $2,000.00. Mrs. Tuttle obtained a garnishment warrant against the Insurance Company, which was tried in the county court on January 26, 1965. Judgment was entered on February 18, 1965, against the Insurance Company in favor of Mrs. Tuttle.

The Insurance Company appealed the case to the Circuit Court of the City of Williamsburg and the County of James City, where it was tried on September 27, 1965. Neither party demanding trial by jury, all matters of fact and law were submitted to the court. At the beginning of the trial, counsel stipulated that there were only two issues involved: (1) whether the loss involved was excluded in the insurance policy because it occurred during a "back-filling" operation; and (2) whether the agent of the Insurance Company bound his company by the letter which he had written to the Tuttles.

After hearing the evidence, no objection or exception being made thereto, the court held that the loss was covered under Clause "C" of the insurance policy, and that "even regardless of what it came under if she (Mrs. Tuttle) made a substantial change in position relying on your (Insurance Company) agent, you are estopped from denying authority. I give the judgment to the plaintiff."

On January 6, 1966, judgment was entered against the Insurance Company "in the sum of Two Thousand Dollars ($2,000.00), together with interest thereon from December 1, 1964, at the rate of six per centum per annum and with damages on the sum of $2,000.00, the amount recovered in the county court, from February 18, 1965 at the rate of 10% per annum until paid, and costs, to all of which Nationwide Mutual Insurance Company duly excepted."

In its notice of appeal, the Insurance Company assigned error on the following grounds: (1) that the judgment was contrary to the law and the evidence; (2) that the trial court "erred in allowing evidence of how the accident occurred in the garnishment proceeding, which evidence was contrary to the evidence on which the original judgment in the county court was rendered;" (3) in allowing testimony of Mrs. Tuttle at variance with the provisions of the insurance policy in question; and (4) in allowing the 10% penalty to run from February 18, 1965, "contrary to the provisions of § 16.1-113 of the Code of Virginia, as amended, said interest as provided should have run from the date of judgment of the Circuit Court, to-wit, January 6, 1966."

[1] Since there was no objection made or exception taken to the admission of any evidence or exhibits during the trial in the circuit court, we need not here consider the assignments relating thereto. Rules of Court 1:8. Moreover, the evidence heard in the county court is not included in the record of the case; and it is not possible for us to determine whether it was contrary to the evidence presented in the circuit court.

It is not disputed that the damage to Mrs. Tuttle's wall was caused by a dump truck of the Contractor striking it; that the truck was engaged in the course of business of the Contractor; and that it was one of the vehicles of Contractor included in the policy of insurance issued to him by Nationwide.

[2-3] We will first consider whether the damage by the truck was within the risk which the Insurance Company assumed.

The policy issued by Nationwide was a comprehensive liability policy, in full force and effect at the time of the damage to the wall. It contains the following coverages:

"COVERAGE C — PROPERTY DAMAGE LIABILITY — *AUTOMOBILE*. (Emphasis added.)

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile."

"COVERAGE D–PROPERTY DAMAGE LIABILITY–*EXCEPT AUTOMOBILE*. (Emphasis added.)

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof caused by accident."

The policy contained the following exclusion clauses:

"The policy shall not apply:

\* \* \* \* \* \* \* \* \* \* \* \*

"(i) under Coverage C, to injury to or destruction of property owned or transported by the Insured, or property rented to or in charge of the Insured other than a residence or private garage injured or destroyed by a private passenger automobile covered by this policy;

\* \* \* \* \* \* \* \* \* \* \* \*

"(1) under Coverage D, to injury to or destruction of any property arising out of (1) blasting or explosion, \* \* \* or (2) the collapse

of or structural injury to any building or structure due (a) to grading of land, excavation, borrowing, filling, back-filling, tunneling, * * * or (b) to moving, shoring, * * *."

In the trial in the circuit court, the Insurance Company claimed exception from liability by reason of the exclusion of "back-filling" from Coverage "D". It failed to note, however, that Coverage "D" applies to "PROPERTY DAMAGE LIABILITY — EXCEPT AUTOMOBILE," and that the damage was done not by "back-filling" itself, but by the truck striking the wall.

Upon appeal, the Insurance Company apparently abandoned its contention in the trial court, and here argues that the loss was excluded from Coverage "C", because section (i) under that Coverage excluded liability "to injury to or destruction of property * * * in charge of the Insured other than a residence or private garage injured or destroyed by a private passenger automobile covered by this policy; * * *."

Neither contention has merit.

The real property and the wall thereon were in charge of, and owned by Mrs. Tuttle. The named insured, Branscombe, was engaged, at the time of the accident, in preparing to dump dirt in the vacant space between the wall and the adjacent land. Back-filling itself did not cause the injury to the wall. The damage was caused by an accident arising out of the "use" of an automobile.

In view of our conclusion that the loss was a risk assumed under Coverage "C" of the policy, it is unnecessary to consider the assignment of error relative to the liability of the Insurance Company because of the admissions and assurances of its agent, Jameson.

[4] We are of opinion that the lower court erred in allowing a 10% damage penalty to run from the date of the judgment in the county court rather than from the date of the judgment in the circuit court.

In this case, an appeal was taken from the county court to the circuit court having jurisdiction. Section 16.1-106, Code of 1950, 1960 Repl. Vol. The entire record was transmitted to the clerk of the circuit court, the Insurance Company paid the writ tax as fixed by law, and the case was docketed. Code, § 16.1-112, 1960 Repl. Vol. The appeal having been perfected, the judgment of the county court was completely annulled, and was not thereafter effective for any purpose. *Addison* v. *Salyer*, 185 Va. 644, 651, 40 S. E. 2d 260.

The case then came on to be heard in the circuit court *de novo*,

as if it had been originally instituted in that court, under Code, §
16.1-113, 1960 Repl. Vol., which provides insofar as material here
that:

"\* \* \* If judgment be recovered by the appellee, execution shall
issue against the principal and his surety, jointly or separately, for
the amount of the judgment, including interest and costs, with dam-
ages on the aggregate at the rate of ten per centum per annum, from
the date of that judgment until payment, and for the costs of the
appeal; \* \* \*."

Upon the hearing of the appeal in the circuit court, a *judgment*
was recovered by the appellee for the amount of her claim, together
with interest and costs. Mrs. Tuttle was also entitled, however, to
recover damages on the above aggregate "at the rate of ten per
centum per annum, from the date of *that judgment* until payment,
and for the costs of the appeal." (Emphasis added.) It is clear that
the words "that judgment" refer to no other judgment than the one
recovered on appeal. There was no other existing judgment in this
proceeding, the judgment in the county court having lost all of its
effect. It is fairly obvious that the purpose of the ten per centum
penalty damage was for the purpose of discouraging appeals with
little or no basis in law or fact from courts not of record.

The judgment appealed from is modified to allow penalty damages
of ten per centum from January 6, 1966, the date of the judgment
of the circuit court, and so modified, is affirmed.

*Affirmed in part; modified in part;
and final judgment.*