PRESENT: All the Justices

THE ROBERT AND BERTHA ROBINSON
FAMILY, LLC

                                                OPINION BY

v. Record No. 161640                     JUSTICE D. ARTHUR KELSEY
                                            March 1, 2018

DOUGLAS O. ALLEN, ET AL.

FROM THE CIRCUIT COURT OF WARREN COUNTY
Ronald L. Napier, Judge

This case began in the general district court ("GDC") when the plaintiff, The Robert and

Bertha Robinson Family, LLC (the "landlord"), filed a warrant in debt and the defendants,

Douglas and Deborah Allen (the "tenants"), filed a counterclaim. The GDC ruled against both

parties and dismissed all claims. The landlord appealed to the circuit court, but the tenants did

not. The landlord later withdrew its appeal. The circuit court awarded sanctions against the

landlord and awarded damages in favor of the tenants on their unappealed counterclaim. The

landlord challenges both of these rulings on appeal. We agree and reverse.

I.

A. THE GDC AND CIRCUIT COURT PROCEEDINGS

The landlord filed a warrant in debt against the tenants in the GDC alleging breach of a

lease agreement. The landlord sought an award for unpaid rent pursuant to a holdover provision

in the lease agreement and for property damage. The landlord nonsuited and then refiled its

claims.[1] The tenants filed a counterclaim seeking to recover their security deposit.[2] The GDC

_____

[1] Neither the record nor the Joint Appendix contains filings related to this first nonsuit. It is mentioned here only to the extent necessary to address the tenants' argument regarding protracted litigation, which we address below. *See infra* at 8-10.

[2] The tenants' counterclaim received a separate case number, "GV15002745-00," J.A. at 56, from that of the landlord's claim, "GV15002039-00," *id.* at 7. Only the case number for the

ruled against the landlord on its claims and against the tenants on their counterclaim. Seeking de novo review in the circuit court, the landlord filed a notice of appeal of the GDC's denial of its claim for unpaid rent and property damage. The tenants did not file a notice of appeal challenging the GDC's denial of their counterclaim, nor did they file any additional pleadings in the circuit court asserting their counterclaim.

Before the case proceeded to a bench trial, the landlord filed a motion to dismiss the counterclaim arguing that it was not properly before the circuit court. The landlord subsequently filed a motion to withdraw its appeal pursuant to Code § 16.1-106.1(A). The landlord's counsel represented that neither the acting manager for the landlord, which was a family-owned limited liability company, nor the acting manager's wife wished to continue the suit due to health complications. In response, the tenants filed a motion for sanctions under Code § 8.01-271.1. The tenants "[took] no position on the health issues" of the acting manager and his wife and did not object to "an order dismissing [the landlord's] appeal so long as [the circuit court] consider[ed]" their motion for sanctions and adjudicated their counterclaim. J.A. at 179, 182.

The circuit court granted the landlord's motion to withdraw and the tenants' motion for sanctions. The circuit court also found that the tenants' counterclaim was properly before it and summarily awarded the tenants $2,600 on their counterclaim without hearing evidence on the matter. The landlord filed a motion to reconsider the circuit court's judgment. The circuit court denied the motion and awarded $10,000 in attorney fees against the landlord as sanctions for the landlord's withdrawn claims.[3]

_____

landlord's claims appears on documents related to the appeal to the circuit court, *see, e.g.*, *id.* at 1-3, and on documents related to the GDC's judgment, *see, e.g.*, *id.* at 5, 90-92. The circuit court does not appear to have given the counterclaim its own case number and its documents refer only to "Case No. CL16-147-00." *See, e.g.*, *id.* at 93, 266, 283.

[3] The tenants assert on brief that "the parties agreed that the [tenants'] counterclaim and

2

The withdrawn claims alleged that the tenants owed the landlord unpaid rent and had failed to restore the leasehold premises to its original condition. Both claims arose out of a 2005 written lease agreement. The lease agreement included a holdover provision, which stated that if the tenants remained on the leasehold premises after the expiration of the lease agreement's five-year term, the landlord "[had] the right, at its sole option and discretion, to [deem]" that the tenants were "occupying" the premises on a "month to month" basis "at double the annual minimum rent." *Id.* at 23. The provision also stated that the tenants would remain subject to all other applicable provisions of the lease agreement. *See id.* In this holdover scenario, "th[e] Lease [would] automatically become a month-to-month lease" without the need for any "notice from [the] Landlord." *Id.*

A different provision also required the tenants to surrender the leasehold premises "broom clean, in good order and condition," and to "remove alterations, additions and improvements not desired by Landlord, [to] repair all damage to the [Leasehold] Premises caused by such removal, and [to] restore the [Leasehold] Premises to the condition which [it was] in prior to the installation of the articles so removed." *Id.* Finally, another provision stated:

> No change or modification of this Lease . . . shall be valid or
> effective unless the same is in writing and signed by the parties
> hereto. No alleged or contended waiver of any of the provisions of
> this Lease shall be valid or effective unless in writing signed by the
> party against whom it is sought to be enforced.

*Id.* at 24.

---

motions for sanctions would remain pending before the [circuit court]." Appellees' Br. at 26. The record does not support this assertion, however. On multiple occasions, the landlord challenged the circuit court's authority to rule on the tenants' counterclaim, *see, e.g.*, J.A. at 150, 192, 199, 268, 272, 275, without any indication of waiver. For this reason, we need not address whether the circuit court's alleged error implicated active or subject-matter jurisdiction for purposes of applying procedural default principles.

In 2010, at the end of the five-year term, the tenants continued to occupy the leasehold premises. For the next four years, the tenants did not pay "double the annual minimum rent" pursuant to the holdover provision. *Id.* at 23. In 2015, one year after the tenants had vacated the premises, the landlord filed the GDC warrant in debt seeking $4,410 in unpaid holdover rent and $20,590 for damage to the leasehold premises.

## C. THE TENANTS' MOTION FOR SANCTIONS

The tenants' motion for sanctions in the circuit court did not specifically address the legal sufficiency of the landlord's claims for holdover rent or property damages. Nor did the motion cite any case law addressing either the statute of frauds or lease agreement provisions prohibiting the non-written modification or waiver of their terms.[4] Instead, the tenants characterized the landlord's claims as "completely and utterly frivolous" and not asserted "in good faith." *Id.* at 181. This conclusion, they argued, was "supported by" the GDC's rejection of the landlord's claims and by the landlord's failure to respond to discovery requests in the circuit court. *Id.*

In addition to their motion for sanctions, the tenants filed Proposed Findings of Fact and Conclusions of Law setting forth their position on the merits of the landlord's claims. In their defense to the holdover-rent claim, the tenants asserted that they and the landlord had "operated under an oral lease . . . with terms similar, but not identical, to the [lease agreement]." *Id.* at 187. The tenants claimed that prior to the litigation, the landlord had not "treat[ed] [the tenants] as holdover tenants or trespassers under the Lease and [had] not charge[d] double rent as provided for in the Lease." *Id.* at 185. Instead, under the new oral lease, the tenants "were obligated to pay rent to the Landlord with increases to be determined by the Landlord," which they had paid

---

[4] In its motion to reconsider, the landlord challenged the sanctions award against it on these grounds. *See* J.A. at 202.

4

"as communicated to them by the Landlord." *Id.* at 187-88. With regard to the property-damage claims, the tenants asserted that the landlord, "in consultation with" the acting manager's grandson, had agreed to accept the vacated premises without further restoration, a decision that had also been permitted under the new oral lease. *Id.* at 186, 188.

At a hearing on the tenants' motion for sanctions, the landlord maintained that the express language of the lease agreement — increasing rent for holdover tenants, *see id.* at 23, forbidding non-written modification or waiver of contractual rights, *see id.* at 18, and requiring restoration of the leasehold premises to its original condition, *see id.* at 23 — established a good-faith basis for the landlord's claims.

Arguing for sanctions, the tenants' counsel "stated that without having *all its evidence* to present at trial, [the landlord] should not have filed its claim." *Id.* at 272 (emphasis added).[5] The circuit court appeared to accept the tenants' argument. After allowing the landlord to withdraw its appeal, the circuit court granted the tenants' motion for sanctions because the landlord "[had] not [brought] its case in good faith." *Id.* at 273. At a hearing to determine the amount of sanctions, the circuit court elaborated on its holding, stating that the landlord had violated its "duty to have *all evidence* upon which it planned to rely on before ever filing suit." *Id.* at 275

_____

[5] On appeal, the tenants disavow this argument and claim that their real argument below was that sanctions against the landlord were warranted because the landlord "had the affirmative duty to ensure that sufficient evidence existed to prove its case prior to filing suit." Appellees' Br. at 8. As counsel for the tenants stated at oral argument, "not *all* evidence . . . [but] there has to be a core of evidence there at the beginning of an appeal in this case to provide the good-faith basis for" the landlord's claims. Oral Argument Audio at 29:30 to 30:19 (emphasis added). The tenants also claim that the circuit court "did not hold that a party must have all evidence available at the inception of a suit in order to avoid sanctions." Appellees' Br. at 20; *see also id.* at 11. Instead, "the basis for the [circuit] court's reasoning" was the "chronology" of the litigation and the "failure to have that core of evidence" before filing an appeal. Oral Argument Audio at 29:37 to 30:40. We disagree with this characterization of the tenants' arguments below and of the circuit court's holding.

(emphasis added).  The circuit court reasoned that the landlord's lawsuit would be "a per se violation of Federal Rule of Civil Procedure 11(b)" and "that similarly such filing of a lawsuit without *all evidence in hand* in Virginia is therefore a violation of [Code] § 8.01-271.1."  *Id.* at 275-76 (emphasis added).

## II.

On appeal, the landlord assigns error to the circuit court's judgments on several grounds. We find two dispositive:  The circuit court erred by awarding sanctions against the landlord and by entering judgment in favor of the tenants on their unappealed counterclaim.

### A.  THE SANCTIONS AWARD

Under settled principles, we apply an abuse of discretion standard when reviewing a sanctions award pursuant to Code § 8.01-271.1.  *See Shebelskie v. Brown*, 287 Va. 18, 26, 752 S.E.2d 877, 881 (2014).

> In applying that standard, we use an objective standard of reasonableness in determining whether a litigant and his attorney, after reasonable inquiry, could have formed a reasonable belief that the pleading was well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for an improper purpose.

*Kambis v. Considine*, 290 Va. 460, 466, 778 S.E.2d 117, 120 (2015) (citation omitted).

The circuit court in this case abused its discretion by applying a rationale for a sanctions award that finds no support in either the text of Code § 8.01-271.1 or our opinions applying it. The statute does not, as the circuit court ruled, place a "duty" on a claimant "to have *all evidence* upon which it planned to rely on before ever filing suit."  J.A. at 275 (emphasis added).  Nor is it "a per se violation" of the statute to file "a lawsuit without *all evidence in hand*."  *Id.* at 275-76 (emphasis added).  When filed, a claim must be "well grounded in fact," Code § 8.01-271.1, not

6

exhaustively supported with every conceivable fact that the party may plan to use at trial.[6]

The circuit court's mistaken analysis also failed to address the viability of the landlord's claims at the time that the landlord filed the notice of appeal. *See Nedrich v. Jones*, 245 Va. 465, 472, 429 S.E.2d 201, 204 (1993) ("examin[ing] the legal theories" to determine if they were "warranted by existing law"). Both claims relied on clearly worded provisions of the lease agreement: one increasing the rent if the tenants became holdovers and the other requiring the tenants to restore the leasehold premises to its original condition. We accept that the tenants believed, not without reason, that they had a strong factual argument either that the parties had entered into a new oral lease or that the landlord had waived the terms of the original lease. *See* J.A. at 56 (asserting waiver); *id.* at 187-88 (asserting a new oral lease). However, unless an expected defense is so irrefutable as to render a claimant's theory of relief frivolous, "claims which are recognized under Virginia law, and as to which the essential elements were pled, are not sanctionable even if they do not prevail on the merits." Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 11.8, at 900 (6th ed. 2014).

Before withdrawing its appeal, the landlord argued in the circuit court that the Statute of Frauds barred the tenants' assertion of a new oral lease. *See* J.A. at 202. This assertion finds support in Virginia law. *See* Code § 11-2(6); *Beach v. Virginia Nat'l Bank*, 235 Va. 376, 378, 367 S.E.2d 516, 517 (1988). Even if the Statute-of-Frauds argument did not apply, the burden of persuasion at trial in the circuit court would have been on the tenants to prove modification or

---

[6] We are similarly unaware of any authority supporting the circuit court's assertion that Federal Rule of Civil Procedure 11(b) imposes such a duty. Under that rule, a party must certify, among other things, that its "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Thus, "a plaintiff is not required to know at the time of pleading all facts necessary to establish the claim." *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001).

waiver as "the party asserting" it, not on the landlord. *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 73, 306 S.E.2d 870, 873 (1983); *see also Reid v. Boyle*, 259 Va. 356, 370, 527 S.E.2d 137, 145 (2000) (stating that the "modification of a contract must be shown by 'clear, unequivocal and convincing evidence'" (citation omitted)); *Reston Surgery Ctr. v. City of Alexandria*, 62 Va. App. 549, 563, 750 S.E.2d 214, 221 (2013) (stating that the party asserting waiver bears the burden of proving it by "clear, precise and unequivocal evidence" (citation omitted)).[7] The landlord reasonably contested the tenants' assertions of a new oral lease and a waiver of the written lease terms. At the time of the notice of appeal to the circuit court, therefore, the landlord's claims were well-grounded in fact and warranted by existing law.

The tenants also claim that the circuit court found bad faith based in part upon "the protracted history of the litigation between the parties," namely the nonsuit of the first GDC warrant in debt and the adverse ruling by the GDC on the landlord's refiled claims on the merits. Appellees' Br. at 20.[8] The circuit court, however, articulated no such finding and only stated that it would award sanctions against the landlord for violating its "duty to have all evidence upon which it planned to rely on before ever filing suit." J.A. at 275. We recognize that an

_____

[7] Agreements prohibiting the non-written modification or waiver of a contract's terms can themselves be modified or waived by a later agreement proven by parol evidence. *See Reid*, 259 Va. at 369-70, 527 S.E.2d at 144-45; 2 E. Allan Farnsworth, Farnsworth on Contracts § 7.6, at 258-60 & nn.7-11 (3d ed. 2004 & Supp. 2015-1) (explaining that this view prevailed under the common law and collecting cases). But as a general rule, any modification or waiver of an agreement subject to the Statute of Frauds must be in writing and signed by the party against whom modification or waiver is being asserted. *See Lindsay v. McEnearney Assocs.*, 260 Va. 48, 53, 531 S.E.2d 573, 575-76 (2000).

[8] The tenants also add that the landlord failed "to respond adequately to discovery" in the circuit court proceeding. Appellees' Br. at 20. The tenants filed a motion for sanctions under Rule 4:12 to obtain a remedy for this alleged failure. *See* J.A. at 117. The circuit court never ruled on this motion, and thus, we do not analyze this issue here. The final order awarded sanctions on the separate motion for sanctions under Code § 8.01-271.1, *see id.* at 266, and the tenants do not assert on appeal that Rule 4:12 provides an alternative basis for the sanctions award.

8

"appellee is free to defend its judgment on any ground" supported by the record, "whether or not that ground was relied upon, rejected, or even considered by the [circuit] court" so long as additional factual findings are unnecessary. *Perry v. Commonwealth*, 280 Va. 572, 581, 701 S.E.2d 431, 437 (2010) (alteration and citation omitted).[9] Even so, we cannot accept the tenants' assertion that the protracted history of this litigation was enough to warrant a sanctions award.

Protracted litigation is a regrettable reality in the modern adversarial process. Assuming that the present dispute became protracted because the landlord exercised its right to a nonsuit and to a de novo appeal of the GDC's judgment, these circumstances, whether considered alone or together, are not intrinsic badges of bad faith. To be sure, it is conceivable that a litigant could initiate litigation, nonsuit and refile the claim, and then fight to the bitter end, all for the singular purpose of harassing an opponent and depleting his resources. If that were the case, it would not matter that the litigant's "pleadings were 'well grounded in fact' and 'warranted by existing law'" because even facially legitimate pleadings cannot be filed for "an improper purpose." *Kambis*, 290 Va. at 467, 778 S.E.2d at 121 (quoting Code § 8.01-271.1). The record in this case, however, does not warrant the inference that the landlord acted with an improper purpose.

---

[9] *See Haynes v. Haggerty*, 291 Va. 301, 305, 784 S.E.2d 293, 294-95 (2016) (describing and applying the right-result-wrong-reason doctrine, sometimes more accurately labeled the right-result-different-reason doctrine when we do not examine the lower court's reasoning); *Starks v. Commonwealth*, 225 Va. 48, 54, 301 S.E.2d 152, 156 (1983) (noting the presumptive correctness of a lower court's application of the law to the facts); *Blackman v. Commonwealth*, 45 Va. App. 633, 643, 613 S.E.2d 460, 465 (2005) (recognizing that the "disparity in treatment" between appellants and appellees, which generally forbids appellants from raising new arguments to challenge the lower court's ruling but allows appellees to do so in some circumstances to support the lower court's ruling, "stems from the presumption of correctness of trial court rulings and the corresponding burden on appellants to rebut that presumption"); *cf. Environment Specialist, Inc. v. Wells Fargo Bank Nw., N.A.*, 291 Va. 111, 117-18, 782 S.E.2d 147, 150 (2016) (recognizing that an appellee's new argument might have merit but ultimately not analyzing it because the court had made no factual findings to support it).

In short, under either its stated rationale or under the tenants' alternative grounds, the circuit court erred in awarding sanctions against the landlord under Code § 8.01-271.1.

## B. THE ADJUDICATED COUNTERCLAIM

The landlord also contests the circuit court's award of $2,600 in favor of the tenants on their counterclaim because the tenants did not file a notice of appeal. In response, the tenants argue that their unsuccessful counterclaim *was* appealed, though unwittingly, by the landlord when *it* filed its own notice of appeal. The tenants claim that this "piggyback" approach to GDC appeals is the customary view among some circuit courts. *See* Appellees' Br. at 13-15 (quoting *Boyce v. Athey*, 4 Va. Cir. 19, 19-21 (1980)).[10] The landlord disagrees and adds that, regardless of accepted custom, the "piggyback" approach is wrong as a matter of law. *See* 1 Kent Sinclair, Virginia Practice and Procedure 40 (2010) (concluding that "where a counterclaim has been filed there must be a specific appeal of the counterclaim from the General District Court" and that an appeal by a plaintiff "does not automatically bring the counterclaim before the circuit court").

A leading scholar of Virginia procedural law, Judge J.R. Zepkin, observed years ago that, in GDC cases involving consolidated claims by several parties, "[t]here is no clear guidance on what happens . . . if one of multiple losing parties wishes to appeal." J.R. Zepkin, *The Rules of Court for the General District Courts of Virginia*, 23 U. Rich. L. Rev. 809, 829 n.43 (1989). This case presents an opportunity to provide that guidance.

### 1.

Though "the antecedents of our modern American appellate system lie in the ancient world," Peter S. Poland, *Appellate Remedy: The Ancient Precedents of a Modern Right*, 17 J.

---

[10] *See also Grinnell Fire Prot. Sys. Co. v. Sills*, 3 Va. Cir. 489, 489-90 (1979).

App. Prac. & Proc. 11, 12 (2016), our jurisprudential anchor is the common law of England.[11]

Under English common law, there was no such thing as an "appeal," strictly speaking. *See*

*generally* Martin P. Burks, Common Law and Statutory Pleading and Practice § 415, at 799-800

(T. Munford Boyd ed., 4th ed. 1952) (comparing the procedure of writs of error and appeals).

The common law recognized only a "writ of error" issued by a higher court in its original

jurisdiction to address "questions of law" ruled upon by a lower court. *Gasperini v. Center for*

*Humanities, Inc.*, 518 U.S. 415, 452 (1996) (Scalia, J., dissenting); *see also* Thomas W. Powell,

The Law of Appellate Proceedings § 14, at 46 (1872).

What was historically "known as 'the appeal' did not refer to what we now think of as an

'appeal' — the correction by a higher court of errors of law made by a lower court." Mary Sarah

Bilder, *The Origin of the Appeal in America*, 48 Hastings L.J. 913, 914 (1997). Instead, a true

"appeal" involved a de novo review by a *chancery* court of a lower court's determinations of

facts and law. *See Tyson v. Scott*, 116 Va. 243, 251, 81 S.E. 57, 61 (1914) (citing Martin P.

Burks, Pleading and Practice in Actions at Common Law § 372, at 735 (1912)); *see also* Powell,

*supra*, § 10, at 44 (stating that "the term [appeal] was unknown to the English common law . . . .

[but] was a common and well known proceeding in the English courts of equity or chancery").

Though the modern use of "appeal" encompasses both true appeals and writs of error,[12] the

---

[11] *See Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 274 n.1, 784 S.E.2d 280, 282 n.1 (2016); *Taylor v. Commonwealth*, 58 Va. App. 435, 443-47, 710 S.E.2d 518, 522-24 (2011).

[12] In Virginia, "[t]he parties in a proceeding in error were commonly called appellant and appellee . . . down to the latter part of the [1800s]." Roscoe Pound, Appellate Procedure in Civil Cases 82 n.6 (1941). The nomenclature, however, did "not abolish the technical distinction between writs of error in law actions and appeals in chancery suits," and "[t]he actual machinery in obtaining a review" remained the same. Burks, Common Law and Statutory Pleading and Practice, *supra*, § 415, at 800 (observing that the terms "appeal" and "writ of error" have been used interchangeably in our Rules); *see also* Virginia Code Comm'n, *Revision of Title 8 of the Code of Virginia*, House Doc. No. 14, at 23 (1977) (explaining the revision of Title 8.01, Chapter

underlying substantive distinctions continue to play a role in our jurisprudence.

The current process governing appeals from the GDC to the circuit court originated with the courts of record[13] exercising supervisory oversight over courts not of record. Prior to 1973, courts not of record fell under the umbrella of the justice-of-the-peace system, which was composed of a variety of inferior courts with limited jurisdiction. *See, e.g.*, *Addison v. Salyer*, 185 Va. 644, 649, 40 S.E.2d 260, 263 (1946) (discussing the "police justice" court); *Covington Virginian, Inc. v. Woods*, 182 Va. 538, 547, 29 S.E.2d 406, 410 (1944) (discussing the "trial justice" court and the "justice of the peace" court).[14] In 1973, courts not of record were brought under a unified system of district courts.[15] *See* Erin Ashwell, *The Virginia Judicial System: Organization and Structure*, *in* Appellate Practice: Virginia and Federal Courts 1, 11 (L. Steven Emmert & Frank K. Friedman eds., 6th ed. 2016).

"In case after case" involving appeals from courts not of record, "we have in clear, unequivocal, and emphatic language repeatedly said that '[t]he right of appeal is statutory and the statutory procedural prerequisites must be observed.'" *Covington Virginian, Inc.*, 182 Va. at 543, 29 S.E.2d at 409 (citation omitted). "The right of appeal is statutory," *Brooks v. Epperson*,

---

26, Article 1, which now uses the word "appeal" as a "generic term" to encompass "appeal, writ of error, or supersedeas").

[13] The term "circuit court" now encompasses all of the trial courts of record previously known as the "circuit court[s] of the county or corporation or hustings court[s] of the corporation," *Gravely v. Deeds*, 185 Va. 662, 664, 40 S.E.2d 175, 176 (1946) (quoting Code § 4989 (1942)), prior to the 1973 reorganization of the Virginia court system.

[14] *See generally* Robert C. Duval, Jr. & William R. Miller, *The Annual Survey of Virginia Law: A New Law for Courts Not of Record*, 42 Va. L. Rev. 1032, 1035-37 (1956) (describing the justice-of-the-peace system and different types of courts not of record after the enactment of Title 16.1 in 1956).

[15] By 1980, the last remaining inferior courts under the justice-of-the-peace system had been replaced by the general and juvenile and domestic relations district courts. *See* Court Sys. Study Comm'n, *Report of the Court System Study Commission to the Governor and the General Assembly of Virginia*, House Doc. No. 6, at 4 (1972).

164 Va. 37, 40, 178 S.E. 787, 788 (1935), because it is "a process of civil law origin," *Tyson*, 116 Va. at 252, 81 S.E. at 61 (citation omitted).

This history directly impacts our analysis of the issue in this case by establishing the first premise:  Absent a statutory authorization or a constitutional mandate, no party has a right to a de novo appeal of the GDC's judgment in the circuit court.  Customary practices, by themselves, cannot create this right.  The tenants do not assert a constitutional basis for their "piggyback" theory of appeal.  Consequently, without a clear statutory basis for it, the GDC's adverse judgment on their counterclaim was not properly before the circuit court.

2.

Title 16.1, Chapter 6, Article 3, Code §§ 16.1-79 to -118.1, governs the procedures applicable to civil cases in the GDC.  Code § 16.1-106 addresses appeals and grants "an appeal of right" to a litigant from "any order entered or judgment rendered in a court not of record in a civil case" when the "matter in controversy" exceeds $20.  Code § 16.1-107 states that no appeal "shall be allowed unless and until the party applying for the same" provides an appropriate bond "sufficient to satisfy the judgment of the court in which it was rendered."  Code § 16.1-107 also requires the "party applying for appeal" to pay a writ tax to the circuit court.

The tenants argue that these statutes imply that a notice of appeal filed by one litigant appeals the entire case on behalf of all other litigants in the GDC case, even the claims of those litigants against whom the appealing party prevailed.  In other words, an appeal by one party converts all other parties into de facto appellants on every adverse ruling of the GDC.  We do not see any textual basis for this statutory inference.

Code § 16.1-106 does not require the appealing party to appeal *every* adverse ruling of the GDC but, rather, provides an "appeal of right" for "*any* order entered or judgment rendered."

Under the tenants' contrary view, a party cannot appeal a loss on one claim without forfeiting his wins on other claims against other parties. So, if a plaintiff asserts claims against two defendants, prevailing against one defendant and losing to the other, he cannot appeal the adverse judgment without sacrificing the favorable judgment. Similarly, if we assume that the losing defendant in the GDC files a notice of appeal but neither the plaintiff nor the winning defendant do, under the tenants' view of the appellate process, the winning defendant loses his victory even though the losing plaintiff never appealed that loss.[16]

The tenants' view also fails to offer a principled explanation as to why a circuit court may review an unappealed judgment on a counterclaim but cannot review an unappealed judgment on the same cause of action when filed as a separate GDC action rather than a counterclaim. The law encourages counterclaims "in an effort to avoid a multiplicity of lawsuits and the danger of inconsistent judgments," W. Hamilton Bryson, Bryson on Virginia Civil Procedure § 6.04[1], at 6-85 (5th ed. 2017), but they nevertheless may be asserted in an "independent action," Sinclair & Middleditch, *supra*, § 9.10[A], at 748. The tenants' approach would allow a defendant filing an unsuccessful counterclaim to "piggyback" that claim onto the plaintiff's notice of appeal but would not allow him to do so if he had filed the same unsuccessful claim as a separate action. Code § 16.1-106 does not explicitly or implicitly endorse this disparate treatment.[17]

---

[16] This is hardly a far-fetched hypothetical. *See, e.g.*, *Khan v. Washington*, 74 Va. Cir. 95, 95-96 (2007); *Nanney v. Navy Car Storage, Inc.*, 7 Va. Cir. 397, 397-98 (1969).

[17] No statute or Rule recognizes a GDC appeal procedure analogous to "assignments of cross-error" in this Court, *see* Rules 5:11(a)(2), 5:18(c), 5:28(b), 5:28(e), or analogous to "additional assignments of error" in the Court of Appeals, *see* Rule 5A:21(b), (d). Even if there were such a procedure, the tenants could not assert their counterclaim in the circuit court because withdrawal of the landlord's appeal extinguishes any assignment of cross-error. *Cf. Alexandria Redev. & Hous. Auth. v. Walker*, 290 Va. 150, 156 n.2, 772 S.E.2d 297, 300 n.2 (2015) ("[T]he assignment of cross-error . . . is jurisdictionally dependent on the initiating appeal. If the appellant's petition for appeal is denied, assignment of cross-error by the appellee will not be granted or considered further by the Court.").

Code § 16.1-107 also undermines the tenants' theory of a one-for-all notice of appeal. That statute says that no appeal "shall be allowed unless and until the party applying for the same" provides an appeal bond "in an amount sufficient to satisfy the judgment." Code § 16.1-107. The "party applying for the same," *id.*, is the party filing the notice of appeal. If his notice of appeal implicitly appeals his opponent's unfavorable rulings as well as his own, must he post an appeal bond on his opponent's behalf for the implicit appeal? Surely not. It would be equally odd to allow a non-appealing party to get the benefit of the appeal — a reprieve from the enforcement of the GDC judgment — with no duty to post an appeal bond at all. Yet, under the tenants' view, the party filing the notice of appeal must strictly comply with the statutory bond requirement, while the party filing no notice of appeal does not.[18] *See* Oral Argument Audio at 24:04 to 24:18.

Code § 16.1-106.1 similarly dissuades us from adopting the tenants' position. That statute expressly refers to "[a] party who has appealed a final judgment or order" who seeks permission from the circuit court "to withdraw that appeal," Code § 16.1-106.1(A), as distinguished from the "party who did not appeal," Code § 16.1-106.1(E).[19] If the legislature

---

[18] Recognizing that it was "unable to find, and has not been cited to, any authority from this jurisdiction directly [o]n point," one circuit court that adopted the tenants' view also required a counterclaimant to post an appeal bond for an unappealed counterclaim as a condition of the circuit court's de novo consideration of the counterclaim. *General Fin. Corp. of Va. v. Woody*, 3 Va. Cir. 462, 462 (1975). The court's reasoning is logical, but does not address the limitation of the duty to post an appeal bond to "the party applying for the [appeal]," Code § 16.1-107.

[19] "Upon the withdrawal of an appeal from" the GDC, the circuit court may consider "whether, as a result of the appeal, a party has a right to additional relief in the circuit court *which has accrued since the appeal was noted*." Code § 16.1-106.1(E) (emphasis added). Granting the circuit court the authority to consider post-appeal matters further indicates that the non-appealing party's rights relating to "matters arising," *id.*, *prior* to the notice of appeal are not before the circuit court. The tenants argue that the circuit court may "conclude all matters arising out of the appeal," *id.*, including their counterclaim. Appellees' Br. at 25. But that assertion merely assumes its conclusion — *i.e.*, that the tenants' counterclaim arises out of the landlord's appeal of the GDC's adverse judgment on the landlord's claim.

15

intended a notice of appeal by one party on one claim to effect an appeal by all parties on all claims, it would not have drawn the distinction between the parties in Code § 16.1-106.1 or referred exclusively to "the party applying for [an appeal]" in Code § 16.1-107.[20]

3.

The tenants call our attention to Code § 16.1-88.01, which addresses counterclaims filed in the GDC. That statute authorizes counterclaims and grants discretion to the GDC to try claims and counterclaims together or separately. In either scenario, the statute directs the court to enter "such final judgment on the whole case as the law and the evidence require." Code § 16.1-88.01. The tenants argue that this provision proves their point. If the GDC must enter final judgment on the "whole case," then the only thing that can be appealed by any party is the "whole case." *See* Appellees' Br. at 15-17.

This argument, while superficially attractive, fails as a non sequitur. With very few exceptions, appeals lie to a higher court only after the lower court enters a final judgment. That maxim applies to appeals from the GDC to the circuit court. *See Ragan v. Woodcroft Vill. Apartments*, 255 Va. 322, 328, 497 S.E.2d 740, 743 (1998). "We have explained that 'a *final judgment* is one which disposes of the *entire action* and leaves nothing to be done except the ministerial superintendence of execution of the judgment.'" *Hackett v. Commonwealth*, 293 Va. 392, 399, 799 S.E.2d 501, 505 (2017) (emphasis added) (citation omitted). A "final judgment" on the "entire action," *id.*, is just another way of saying a "final judgment on the whole case," Code § 16.1-88.01. Both expressions require final dispositions on all pending claims before any

---

[20] *See also, e.g.*, Code §§ 16.1-109(A) (authorizing the circuit court to require the "appellant" to give "new or additional security" to protect an appellee's judgment in the GDC), 16.1-111 (permitting the "party taking the appeal" to "direct" the appeal to any circuit court with jurisdiction to review it), 16.1-112 (referring to the "appellant" and "appellee" in describing the notification requirements for a docketed appeal).

of them can be appealed. But neither means that *only* the whole case, as opposed to an adverse

disposition of a single claim within it, can be appealed. No statute or case law has ever adopted

such an all-or-nothing view. The reference to the "whole case" in Code § 16.1-88.01, therefore,

does not answer the question before us.

4.

Lastly, the tenants correctly observe that circuit courts review GDC judgments de novo.

*See* Code § 16.1-106. From this premise, the tenants incorrectly infer that a circuit court must

adjudicate both appealed and unappealed rulings in order to conduct a proper de novo review.

De novo defines the nature of the review, not the scope of review. Appellate courts

employ the de novo standard of review when analyzing a host of issues, such as statutory

interpretation, the plain meaning of contracts, resolution of constitutional questions, and the

proper use of demurrers. But the only issues that an appellate court actually adjudicates are

those properly before it.[21] The scope of appellate review is not determined by the standard of

review. The two are very different concepts.

We appreciate how the contrary view has evolved, however. In the days of the justice-of-

the-peace system, we said that the impact of an appeal was to "destroy the effect of a judgment

of the justice" as if it had never "been rendered." *Thomas Gemmell, Inc. v. Svea Fire & Life Ins.*,

---

[21] The tenants point out that the circuit court applies a de novo standard of review to both questions of law and of fact, *see Thomas Gemmell, Inc. v. Svea Fire & Life Ins.*, 166 Va. 95, 98, 184 S.E. 457, 458 (1936) (describing a circuit court's review of a lower court's judgment as one that "disregards the judgment of the court below, which hears evidence anew and new evidence, and which makes final disposition of the case"), whereas an appellate court typically applies de novo review only to questions of law, *see Parrish v. Fannie Mae*, 292 Va. 44, 49, 787 S.E.2d 116, 120 (2016). *See* Oral Argument Audio at 21:50 to 22:38. We agree but still do not see how that distinction determines what claims are before the circuit court on appeal. It merely confirms that the issues of whatever claims that are properly before the circuit court must be reviewed de novo.

17

166 Va. 95, 99, 184 S.E. 457, 458 (1936) (citation omitted). The tenants contend that the destruction of a lower court judgment necessarily results in some collateral consequences, including the continuation of litigation over aspects of the judgment that were not specifically appealed by any party. *See* Appellees' Br. at 12. For several reasons, we believe the tenants' destruction theory goes too far.

First, though we have referred to the "destruction" or "annulment" of a lower court's judgment on many occasions,[22] each one involved an appeal of a judgment *adverse* to the appellant. None of the holdings in those cases address the issue before us — whether a notice of appeal filed by one party effectively appeals all adverse dispositions involving *other* parties who failed to file a notice of appeal. We thus resist the suggestion that stare decisis requires us to endorse the tenants' "piggyback" theory of GDC appeals because, as we recently said, our duty to "follow binding precedent is fixed upon case-specific holdings, not general expressions in an opinion that exceed the scope of a specific holding." *Vasquez v. Commonwealth*, 291 Va. 232, 242, 781 S.E.2d 920, 926 (2016). Chief Justice John Marshall said it best: "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399-400 (1821); *see also Funny Guy,*

---

[22] *See, e.g.*, *Commonwealth v. Diaz*, 266 Va. 260, 266, 585 S.E.2d 552, 555 (2003); *Santen v. Tuthill*, 265 Va. 492, 496-97, 578 S.E.2d 788, 790-91 (2003); *Buck v. City of Danville*, 213 Va. 387, 388, 192 S.E.2d 758, 759 (1972); *Nationwide Mut. Ins. v. Tuttle*, 208 Va. 28, 32, 155 S.E.2d 358, 361 (1967); *Gaskill v. Commonwealth*, 206 Va. 486, 490, 144 S.E.2d 293, 296 (1965); *Baylor v. Commonwealth*, 190 Va. 116, 119-20, 56 S.E.2d 77, 78 (1949); *Stacy v. Mullins*, 185 Va. 837, 842, 40 S.E.2d 265, 267 (1946); *Gravely*, 185 Va. at 664, 40 S.E.2d at 176; *Addison*, 185 Va. at 650, 40 S.E.2d at 263; *Burford v. Commonwealth*, 179 Va. 752, 765, 20 S.E.2d 509, 514 (1942); *Malouf v. Roanoke*, 177 Va. 846, 855-56, 13 S.E.2d 319, 322 (1941); *Thomas Gemmell, Inc.*, 166 Va. at 99, 184 S.E. at 458.

*LLC v. Lecego, LLC*, 293 Va. 135, 160 & n.22, 795 S.E.2d 887, 900 & n.22 (2017).

Second, the tenants' theory incorrectly assumes that a judgment is destroyed or annulled by a notice of appeal. However, "an appeal to a circuit court from a district court judgment annuls that prior judgment" only after "a trial de novo has commenced on the merits of the case." *Commonwealth v. Diaz*, 266 Va. 260, 266, 585 S.E.2d 552, 555 (2003). At a trial de novo, "the circuit court disregards the judgment of the district court, hears the evidence anew and may consider new evidence, and makes final disposition of the case as if the case had not proceeded to judgment in the district court." *Id.* The "event" that triggers the "annulment of the district court judgment" is the trial de novo, *id.*, not the notice of appeal. Even under the tenants' theory, therefore, the GDC's ruling against their counterclaim was never annulled because the circuit court never commenced a de novo evidentiary hearing on the merits.

Third, the tenants' theory is also difficult, if not impossible, to reconcile with the fact that a party cannot assert an unappealed counterclaim that was abandoned in the GDC. *See K-B Corp. v. Gallagher*, 218 Va. 381, 386-87, 237 S.E.2d 183, 186-87 (1977). If a complainant's notice of appeal truly destroyed the GDC's judgment as if it had never been entered, then a counterclaimant could simply reassert the abandoned counterclaim in the circuit court. But in *K-B Corp.*, we specifically held that a counterclaimant cannot do that.

In *K-B Corp.*, the defendant did not appeal the GDC's failure to rule on its counterclaim, but the plaintiff did appeal the unfavorable judgment of his claim. *See id.* at 386, 237 S.E.2d at 187. The circuit court did not permit the defendant to reassert its counterclaim because it did not file a notice of appeal challenging the GDC's failure to rule on it. *See id.* at 382, 237 S.E.2d at 184. Like the tenants here, the defendant in *K-B Corp.* argued that it did not matter that it had never appealed its counterclaim because the plaintiff's notice of appeal had annulled the GDC's

19

judgment and "removed" the entire case to the circuit court. *Id.* at 386, 237 S.E.2d at 187. Though we found it "unnecessary" to directly address this broad assertion, we nonetheless held that the defendant had abandoned its counterclaim in the GDC and could not revive it in the circuit court. *Id.* at 386-87, 237 S.E.2d at 187. We did not elaborate but our ruling necessarily rejected the notion that the filing of a notice of appeal by any party annuls the GDC's judgment.

The tenants' theory also cannot overcome Code § 16.1-106.1. Enacted in 2008, that statute authorized the withdrawal of GDC appeals pending in the circuit court for the first time. Only "[a] party who has appealed . . . may seek to withdraw [the] appeal." Code § 16.1-106.1(A). The effect of a withdrawal is to leave the GDC's decision untouched if the appeal is unperfected at the time a party seeks a withdrawal or if the claim does not require costs or an appeal bond for perfection and withdrawal is sought within ten days from the GDC's judgment. *See* Code § 16.1-106.1(A)(1) ("When the appeal is withdrawn in the district court, the judgment or order of the district court shall have the same effect as if no appeal had been noted."). If the notice of appeal effectively "destroy[ed]" the judgment as if it had never "been rendered," *Thomas Gemmell, Inc.*, 166 Va. at 99, 184 S.E at 458, there would be nothing left to stand upon following the withdrawal of the appeal, necessarily contradicting the mandate of this statute.

5.

We end our analysis by returning to first principles. At common law, there was no right to a de novo appeal of a lower court's factual findings and legal conclusions. *See supra* at 11-13. In this case, the tenants claim a "piggyback" right of appeal, Appellees' Br. at 14, 26 (citation omitted), based solely upon a notice of appeal filed by the landlord. No statute grants that right either expressly or implicitly. The only rationale for this putative right rests on extending the destruction-annulment theory to a dissimilar context.

20

For these reasons, we hold that the "appeal of right," Code § 16.1-106, belongs to "the party applying for the same," *id.* § 16.1-107. *See generally* 1 Sinclair, *supra*, at 40. When the GDC enters a final, appealable judgment on claims pleaded in a "warrant, summons or complaint," Rule 7B:4(a); a "counterclaim" or "cross-claim," Rule 7B:3(a); or a "third-party civil warrant or complaint," Rule 7B:10(a), any party seeking on appeal to change or modify an unfavorable disposition of a claim asserted by or against him must file a notice of appeal. The failure to do so will leave the GDC's judgment on the claim intact and subject to res-judicata principles. *See, e.g.*, *Scales v. Lewis*, 261 Va. 379, 382-83, 541 S.E.2d 899, 900-01 (2001); *Virginia Dynamics Co. v. Payne*, 244 Va. 314, 318, 421 S.E.2d 421, 423 (1992).

## III.

In sum, the circuit court erred in imposing monetary sanctions on the landlord pursuant to Code § 8.01-271.1 and in adjudicating the tenants' counterclaim. We reverse the circuit court's sanctions award and vacate its award of $2,600 on the tenants' counterclaim.

*Reversed and final judgment.*