UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Ortiz, Frucci and Bernhard
Argued at Fairfax, Virginia


EDEN STUART

v.       Record No. 0556-23-4

WAYNE EDGAR CAMPBELL                        MEMORANDUM OPINION[*] BY
                                            JUDGE STEVEN C. FRUCCI
                                            AUGUST 5, 2025

EDEN SUSANNA STUART

v.       Record No. 0448-24-4

WAYNE EDGAR CAMPBELL


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Douglas L. Fleming, Jr., Judge

Thomas K. Plofchan, Jr. (Jacqueline A. Kramer; Westlake Legal
Group, on briefs), for appellant.

Brian M. Hirsch (Sharon F. Pederson; Hirsch & Ehlenberger, P.C.,
on briefs), for appellee.


These appeals arise from protracted, multi-state litigation between Eden Stuart

("mother") and Wayne Campbell ("father") regarding custody and visitation of their child, O.C.[1]

Mother generally argues that the circuit court erred by (1) awarding father sole legal and primary

physical custody, (2) finding her in contempt for violating certain court orders addressing

custody, and (3) awarding father attorney fees.  To begin, she contends that the Circuit Court of

Loudoun County did not have jurisdiction to enter orders in 2023 that resolved the present

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] We use initials, rather than names, to protect the privacy of the minor child.

litigation because of a procedural irregularity. Mother argues that the procedural defect occurred in 2021 when an appeal to the circuit court was remanded back to the Loudoun County Juvenile and Domestic Relations District Court. She maintains that the procedural irregularity deprived the JDR court of jurisdiction on remand, which in turn deprived the circuit court of derivative jurisdiction during a second appeal in 2023, and that the circuit court improperly attempted to correct the irregularity years later using its authority under Code § 8.01-428(B). Next, regarding the merits, mother asserts that the circuit court failed to properly weigh the evidence in its custody and contempt rulings. Finally, she argues that the court abused its discretion by awarding father $45,000 in attorney fees because some of those fees may have been incurred in Maine litigation where father was not the prevailing party.

We agree that the circuit court exceeded its authority to correct clerical errors under Code § 8.01-428(B) by attempting to change the date that an order was entered. Accordingly, in Record Number 0448-24-4, we reverse the circuit court's judgment and remand for entry of a new nunc pro tunc order that accurately reflects the date the order was actually entered. Notwithstanding that issue, there was no jurisdictional defect as mother alleges, and she has demonstrated no reversible error in the circuit court's custody, contempt, and attorney fee rulings. Accordingly, the circuit court's judgment is affirmed as to those issues in Record Number 0556-23-4.[2]

---

[2] On May 8, 2025, mother filed an emergency motion for leave to litigate custody. We deny mother's motion.

BACKGROUND[3]

I. Procedural History Below

Mother and father have been litigating issues related to the custody, visitation, and support of O.C. in Loudoun County since before February 2015. In April 2020, mother, *pro se*,[4] moved the JDR court to transfer three different custody and support matters to Prince William County because those courts were "open for mediation" during the COVID-19 pandemic. The JDR court initially transferred venue but subsequently vacated its order and, after a further hearing, denied mother's motion. Mother appealed the denial order to the circuit court and asked for a two-day trial. On February 8, 2021, the circuit court sua sponte ruled that the appealed JDR order was not a final order. Accordingly, the circuit court "denied without prejudice" mother's motion for a two-day trial but did not explicitly dismiss the appeal.

Meanwhile, litigation continued in the JDR court, which, on March 16, 2021, entered a consent order incorporating the parties' emergency temporary custody and support modification agreement. In the temporary agreement, mother agreed to "withdraw and dismiss, with prejudice[,] her appeal" to the circuit court of the order denying transfer of venue. The agreement also provided the parties with "share[d] week-on, week-off" custody and allowed mother to exercise her visitation in Maine, where she had secured employment. Nevertheless, if the parties could not arrange a permanent "custodial schedule" by the fall of 2021, the temporary agreement provided that the prior custody orders would resume effect, and O.C. would be returned to father in Northern Virginia to attend school.

---

[3] On appeal, "'this Court must consider the evidence in the light most favorable'" to the prevailing party below, "granting them the benefit of any reasonable inferences." *Veldhuis v. Abboushi*, 77 Va. App. 599, 602 n.2 (2023) (quoting *Young Kee Kim v. Douval Corp.*, 259 Va. 752, 756 (2000)).

[4] Although proceeding *pro se*, mother was a licensed attorney in Maine by 2021.

Two days later, mother moved the circuit court to dismiss her appeal, agreeing that she had attempted to appeal a non-final order to the circuit court. Mother attached a consent order to her motion that dismissed the appeal with prejudice and remanded the matter to the JDR court. That attached consent order, however, included the circuit court record number for only one of the three cases. On March 24, 2021, eight days after the JDR court entered the order that incorporated the temporary agreement, the circuit court entered the consent order dismissing mother's appeal.

Mediation failed, and mother and father could not reach a permanent custody agreement by the fall of 2021, so mother told father that she believed the prior custody orders were "void." Father subsequently filed an emergency motion for "modification of custody," alleging that mother had relocated to Maine with O.C., initiated custody and visitation litigation in that state, and was refusing to return him to Northern Virginia under the temporary agreement. In April 2022, the JDR court awarded father sole legal and primary physical custody of O.C., noting that the Maine courts had "fully declined jurisdiction." By a separate order, the JDR court found mother in contempt for violating several JDR court orders, including the March 16, 2021 order that incorporated the parties' temporary agreement, and ordered her to pay $65,159.50 of father's attorney fees. Mother appealed both orders to the circuit court.

After a de novo trial,[5] the circuit court issued a letter opinion on February 16, 2023, finding that mother had (1) initiated custody litigation in Maine despite a Virginia custody order, and (2) unreasonably withheld O.C. from father in Maine despite his right to have the child returned under the custody order. Moreover, the circuit court found that by doing so, mother demonstrated her "inability to support [O.C.'s] relationship with his father." Consequently, the

---

[5] The evidence presented during the de novo circuit court trial is detailed below, where this opinion addresses mother's assignments of error challenging the merits of the circuit court's judgment.

- 4 -

circuit court awarded father sole legal and primary physical custody of O.C. and found that he should not have contact with mother save under a "reunification protocol." Moreover, the circuit court held mother in contempt of court for violating the March 16, 2021 JDR court order, which incorporated the parties' temporary agreement, but did not sanction her beyond considering it as a factor in awarding attorney fees. To that end, the circuit court ordered mother to pay father $45,000 "as partial reimbursement of [his] attorney[] fees." In explaining the award, the circuit court considered "the substance of its rulings on both the custody/parenting time issue as well as the rule to show cause issue." It found that father had "substantially prevailed" and noted that, "had the mother not violated" the March 16, 2021 JDR court order, "this entire litigation would have been unnecessary."

The day after the circuit court issued its letter opinion, but before it had entered a final order reflecting its rulings, mother, *pro se*, moved the circuit court to set aside its judgment and vacate all orders the JDR court had entered after October 2020, including the March 16, 2021 order she had been found in contempt for violating. She asserted that because the circuit court's February 8, 2021 order had only dismissed one of the three pending cases (the support matter) from the first appeal, the other two cases (custody and visitation) remained pending in the circuit court and were never remanded. She therefore maintained that all of the JDR court's subsequent orders were void ab initio for lack of jurisdiction, which also rendered the circuit court without derivative jurisdiction.

In response, father moved the circuit court under Code § 8.01-428(B) to correct the omission of all docket numbers from the March 24, 2021 order that dismissed mother's previous appeal to the circuit court. He asserted that the circuit court's order did not "accurately reflect the court's ruling," which "applied to [all] three cases numbers," and "need[ed] to be corrected to reflect the . . . actual ruling." Father asked for attorney fees, asserting that the parties' 2021

agreement, which was incorporated in the JDR court's March 16, 2021 order, required mother to withdraw her appeals and provided for attorney fees if mother failed to comply with its terms.

On March 1, 2023, while the above motions were pending, the circuit court entered a final order reflecting the rulings in its letter opinion. The order also held mother in contempt for violating the JDR court's March 16, 2021 order. Mother objected on numerous grounds, including that the JDR court had lacked subject matter jurisdiction to enter the March 16, 2021 order she allegedly violated, as asserted in her motion, and it was "a legal impossibility to be in contempt of a void order." Specifically, she maintained that the JDR court could not enter the order because the matters were on appeal to the circuit court, depriving the JDR court of jurisdiction when it entered the order she allegedly violated.

On March 3, 2023, the circuit court heard the parties' competing motions. Mother argued that the circuit court's order did not contain a clerical error but a "mistake" that could not be amended nunc pro tunc under Code § 8.01-428(B). Regardless, she maintained that even if the court added the missing record numbers to the March 24, 2021 order nunc pro tunc, that would not save the *previously entered* March 16, 2021 JDR court order, which she was held in contempt for violating. Mother argued that the circuit court could not "breathe life into" the March 16th order, which was void along with every other order that "flow[ed]" from it. Thus, she asked the circuit court to vacate a series of orders, negating years of litigation, and transfer the case to Maine or, in the alternative, remand the case to the Prince William Juvenile and Domestic Relations District Court, consistent with her original motion.

After a hearing, the circuit court found that the March 24, 2021 order contained clerical errors that could be corrected, noting that "one of the most frequent clerical errors is case numbers being left off of an order." Moreover, noting that the parties had vigorously litigated the issues for years, the circuit court questioned whether mother's motion, which would have

negated all of that litigation, was made in "good faith." Consistent with that ruling, on March 20, 2023, the circuit court ordered that the March 24, 2021 order dismissing mother's previous appeal "shall be amended" nunc pro tunc "to March 16, 2021 to coincide with" the JDR court order of March 16, 2021, that incorporated the parties' agreement, rather than to the date of the original order, and to add the omitted case numbers. Although the circuit court's March 20, 2023 order referenced an "attached Amended order," the circuit court did not attach such an order nunc pro tunc correcting the purported error.

II. Procedural History on Appeal

Mother timely noted an appeal of both the March 1, 2023 and March 20, 2023 orders (that appeal is docketed under Record Number 0556-23-4). She argues that the circuit court's March 1, 2023 order is void ab initio due to a faulty jurisdictional "hand off" from the circuit court to the JDR court in the March 24, 2021 order. Although a circuit court order dismissing a case typically remands the case to the JDR court by operation of law, mother contends that the automatic remand did not occur because the circuit court's order failed to *dismiss* the appeal but only *denied* her motion for a two-day trial. Thus, mother contends that the above defect had a jurisdictional "domino" effect, depriving the JDR court of jurisdiction to render its post-2021 contempt and custody decisions and, also, depriving the circuit court of its derivative jurisdiction during mother's second appeal. Mother also argues that the circuit court improperly issued the March 20, 2023 nunc pro tunc order to change the date of its March 24, 2021 order to March 16, 2021. Finally, mother challenges the merits of the circuit court's custody and contempt rulings.

In July 2023, father moved this Court to dismiss mother's appeal, arguing that the March 20, 2023 order was interlocutory because the circuit court never entered a nunc pro tunc order correcting the clerical error that it found existed. We found that the March 1, 2023 order finding mother in contempt was an immediately appealable order under Code § 19.2-318. *Stuart v.*

*Campbell*, No. 0556-23-4, slip op. at 4 (Va. Ct. App. Oct. 2, 2023) (order). By contrast, we held that the March 20, 2023 order was an unappealable interlocutory order because the court did not actually enter a nunc pro tunc order, leaving "something for the circuit court to do." *Id.*, slip op. at 3. Accordingly, on October 2, 2023, we dismissed mother's appeal of the March 20, 2023 order, stating that the appeal would "proceed only on mother's challenge to the circuit court's March 1, 2023 order." *Id.*, slip op. at 4.

Following this Court's partial dismissal of this appeal, however, neither the circuit court nor the parties sought entry of the nunc pro tunc order correcting the clerical error that the circuit court found to exist. Accordingly, on December 4, 2023, we remanded this case to the circuit court under Code § 8.01-428(B) to certify whether any clerical error existed in the record and to issue any appropriate orders correcting such an error. *Stuart v. Campbell*, No. 0556-23-4 (Va. Ct. App. Dec. 4, 2023) (order).

On December 6, 2023, the circuit court entered an "Order Correcting Clerical Error." The order purported to amend the "entire March 24, 2021 order" nunc pro tunc, to be entered instead on March 16, 2021. The court also sought to correct a clerical error by amending the March 24, 2021 order to include all three relevant record numbers instead of just one. The circuit court transmitted its nunc pro tunc order to this Court on December 14, 2023. Nevertheless, the parties were not informed that the nunc pro tunc order had been entered and transmitted to this Court. Consequently, on February 26, 2024, we denied mother's motion to amend her assignments of error in Record Number 0556-23-4 but granted her an extension of time to file a notice of appeal challenging the circuit court's nunc pro tunc order. *Stuart v. Campbell*, No. 0556-23-4 (Va. Ct. App. Feb. 26, 2024) (order). Following, mother filed a notice of appeal with a single assignment of error challenging the nunc pro tunc order, reflected in Record No. 0448-24-4. Therefore, we do not address any assignments of error related to the

nunc pro tunc order in Record Number 0556-23-4, and only address whether the circuit court erred in entering said order in Record Number 0448-24-4.

In her opening brief in that appeal, mother argues that the circuit court's December 6, 2023 order amending the March 24, 2021 order nunc pro tunc to represent that it was actually entered on March 16, 2021, was in error. She maintains that the amendment "created a fiction" because the circuit court did not in fact enter any order on March 16, 2021, and it could not "retroactively invest subject matter jurisdiction in the [JDR court] via a nunc pro tunc order." This Court consolidated mother's appeals for oral argument.

ANALYSIS

I. Correcting Clerical Errors

"Code § 8.01-428(B) . . . allows for the correction of '[c]lerical mistakes in all judgments . . . arising from oversight or from inadvertent omission.'" *Jefferson v. Commonwealth*, 298 Va. 473, 476-77 (2020) (second and third alterations in original). After an appeal "is docketed in the appellate court," a clerical mistake "may be corrected with leave of the appellate court." Code § 8.01-428(B). That is, a circuit court has the authority to enter an amended order or a nunc pro tunc order to correct a clerical mistake. *Jefferson*, 298 Va. at 476-77; *Harris v. Commonwealth*, 222 Va. 205, 210 (1981). But the "power to amend" under Code § 8.01-428(B) "should not be confounded with the power to create." *Jefferson*, 298 Va. at 477 (quoting *Council v. Commonwealth*, 198 Va. 288, 292 (1956)). "Instead, this power of correction 'extends no further than the power to make the record entry speak the truth.'" *Id.* (quoting *Council*, 198 Va. at 292). Thus, Code § 8.01-428(B) does not permit a circuit court to correct a misstep it realizes in hindsight was error. *See Zhou v. Zhou*, 38 Va. App. 126, 133-34 (2002) (holding that a circuit court could not use Code § 8.01-428(B) to vacate and reissue a

final order, thereby granting a party additional time to file a notice of appeal, after realizing that a procedural error deprived the parties of "notice" of the order's original entry).

Here, the circuit court purported to amend its March 24, 2021 order nunc pro tunc under Code § 8.01-428(B) to reflect that it was actually entered on March 16, 2021. The record demonstrates, however, that the circuit court did not, in fact, enter the order on March 16, 2021. Rather, it was entered on March 24, 2021. Thus, the circuit court's purported amendment did not correct an error to "make the record entry speak the truth" of what actually happened; rather, it attempted to "create" a new record to reflect that something occurred when it had not. *Jefferson*, 298 Va. at 477 (quoting *Council*, 198 Va. at 292). Such an amendment exceeds the scope of a circuit court's authority to correct a clerical error.

Accordingly, in Record Number 0448-24-4, we vacate the circuit court's December 6, 2023 order and remand for the circuit court to enter a new order nunc pro tunc that adds the missing record numbers to the March 24, 2021 order, without changing the date the order was entered. Nevertheless, as explained below, our conclusion that the circuit court erred in its December 6, 2023 order does not require reversal of the circuit court's March 2023 order (challenged in Record Number 0556-23-4), as the JDR court retained jurisdiction to litigate the parties' custody, visitation, and support matters regardless of when the circuit court dismissed mother's first appeal.

II. JDR Court's Jurisdiction

Challenges to a court's jurisdiction are questions of law we consider de novo. *Reaves v. Tucker*, 67 Va. App. 719, 727 (2017). "As courts not of record, . . . district courts are creations of the General Assembly." *Parrish v. Fannie Mae*, 292 Va. 44, 49 (2016) (citing Va. Const. art. VI, § 8). "They are courts of limited jurisdiction and may exercise only such subject matter jurisdiction as has been expressly conferred by statute." *Id.* Generally, juvenile and domestic

- 10 -

relations district courts have "exclusive original jurisdiction . . . over all cases, matters and proceedings involving . . . [t]he custody, visitation, support, control or disposition of a child." Code § 16.1-241(A).

Circuit courts "have appellate jurisdiction in all cases, civil and criminal, in which an appeal *may*, *as provided by law*, *be taken* from the judgment or proceedings of any inferior tribunal," such as a district court. Code § 17.1-513 (emphasis added). To that end, "Code § 16.1-106 . . . grants 'an appeal of right'" to a circuit court "from 'any order entered or judgment rendered in a court not of record in a civil case' when the 'matter in controversy' exceeds $20." *Robert & Bertha Robinson Fam., LLC v. Allen*, 295 Va. 130, 145 (2018). Thus, if a litigant filed a notice of appeal within ten days of a district court's final order, the circuit court "within the territory of the court from which the appeal is taken" will hear the case "de novo." Code § 16.1-106(A).

"With very few exceptions, appeals lie to a higher court only after the lower court enters a final judgment[,]" and "[t]hat maxim applies to appeals from [district courts] to the circuit court." *Robert & Bertha Robinson Fam.*, 295 Va. at 148. "[A] *final judgment* is one which disposes of the *entire action* and leaves nothing to be done except the ministerial superintendence of execution of the judgment." *Id.* (quoting *Hackett v. Commonwealth*, 293 Va. 392, 399 (2017)). In addition, "[t]he orderly administration of justice demands that when an appellate court acquires jurisdiction over the parties involved in litigation and *the subject matter of their controversy*, the jurisdiction of the trial court from which the appeal was taken must cease." *Reaves*, 67 Va. App. at 727 (alteration in original) (quoting *Greene v. Greene*, 223 Va. 210, 212 (1982)). Thus, "[w]hen a party files a notice of appeal, that notice 'effectively transfers jurisdiction from the lower court to the appellate court and places the named parties within the jurisdiction of the appellate court.'" *Id.* (quoting *McCoy v. McCoy*, 55 Va. App. 524, 528

(2010)). However, a notice of appeal cannot transfer to an appellate court jurisdiction over the subject matter of a case if that subject matter is not within the appellate court's jurisdiction. *Id.* at 727-28. Thus, we have held that when "jurisdiction to address the merits of the appeal was *never transferred* to this Court, the trial court *never lost jurisdiction* to adjudicate th[e] case." *Id.* at 729 (emphases added).

"As a practical matter, when a notice of appeal of an interlocutory order is filed, the trial court proceeds at its own risk"—but it can proceed. *Id.*

> As with any appeal, if [the appellate court] reverses the trial court's decision and remands the case back to the trial court, then any decision by the trial court subsequent to the order being appealed that is in conflict with the resolution of the appeal by this Court will have no force and effect.

*Id.* If the lower court "doubt[s] whether the appellate court will reverse its interlocutory order, 'it may decline to act further until the purported appellee obtains dismissal of the appeal,'" and perhaps such "a stay may promote judicial efficiency." *Id.* (quoting *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc)). But "[w]here the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a *nonappealable order*, is clear to the [lower] court, it may [exercise its discretion] . . . and proceed with the case, knowing that *it has not been deprived of jurisdiction*." *Id.* (emphases added) (first, third, and fourth alterations in original).

Here, the circuit court held that mother had attempted to appeal the JDR court's nonfinal, interlocutory order denying her motion to transfer venue. That ruling was not appealed or challenged by either party, so it is the law of the case. *Neff v. Commonwealth*, 63 Va. App. 413, 416 (2014) (holding that an unchallenged finding is "binding on the parties for purposes of appeal" (quoting *Today Homes, Inc. v. Williams*, 272 Va. 462, 470 (2006))). Given that mother's notice of appeal challenged an unappealable interlocutory order, her notice of appeal did not

confer on the circuit court subject matter of the controversy, meaning that the JDR court never lost jurisdiction to adjudicate the case. *Robert & Bertha Robinson Fam.*, 295 Va. at 148; *Reaves*, 67 Va. App. at 729.[6] Thus, regardless of *when* the circuit court entered its order dismissing mother's first appeal and what case numbers were included on that dismissal order, the JDR court had jurisdiction to continue litigating the case and enter the March 16, 2021 order that mother was later held in contempt for violating. Consequently, the circuit court also had derivative jurisdiction to hear mother's *second* appeal of the orders holding her in contempt, awarding father sole legal and primary physical custody, and ordering mother to pay attorney fees. *See Parrish*, 292 Va. at 49 (holding that on appeal a circuit court's jurisdiction is derivative, meaning it has no more jurisdiction than the district court had in the original proceeding).

### III. Merits of Contempt Finding and Attorney Fee Award

Next, we turn to mother's arguments on the merits that the circuit court erred by finding her in contempt, weighing the best interest factors in its custody determination, and in awarding father attorney fees. As noted above, in reviewing those arguments, we "'must consider the evidence in the light most favorable'" to father, the prevailing party below, "granting [him] the benefit of any reasonable inferences." *Veldhuis v. Abboushi*, 77 Va. App. 599, 602 n.2 (2023) (quoting *Young Kee Kim v. Douval Corp.*, 259 Va. 752, 756 (2000)).

---

[6] Maintaining that the circuit court had jurisdiction, mother notes in her reply brief that the court retained jurisdiction to consider father's motion for attorney fees during the first appeal. But even if a defective notice of appeal does not provide an appellate court with subject matter jurisdiction, the court may still have personal jurisdiction over the parties for purposes of awarding attorney fees related to an "imprudent" and "premature[]" appeal. *Reaves*, 67 Va. App. at 728.

A.  Evidence Presented at Trial

On October 17, 2022, at the de novo trial in circuit court following mother's second appeal, the circuit court considered father's petitions to amend the parties' custody and visitation of O.C. and father's "rule to show cause" why mother should not be held in contempt for violating the JDR court's March 16, 2021 order.  At the beginning of the hearing, mother informed the court that she was no longer represented by counsel and intended to proceed *pro se* during the trial.

A 2017 JDR court order had established an alternating custody schedule for O.C., where father and mother had "alternating weekends and about half the weekdays."  They had joint legal custody, but the 2017 order gave father "decision-making rights" regarding school.  In March 2021, father and mother agreed to modify the custody schedule in a "temporary custody visitation arrangement."  Mother had obtained a job in Maine, and father agreed to a temporary arrangement for the summer of 2021 to facilitate her employment.  The temporary agreement provided that O.C. would spend alternating weeks in Maine and Virginia, with mother paying for all travel, and the agreement would end in August 2021.  The temporary agreement also required the parties to mediate "to find a permanent schedule."  If the agreement expired without the parties establishing a permanent schedule, the 2017 JDR court's order resumed effect. Moreover, if that occurred, the temporary agreement required mother to return O.C. to Virginia, where he would attend school.  The parties further agreed that Virginia would retain jurisdiction over the litigation unless father decided to move.  To that end, the parties were obliged to provide 30 days written notice of an intent to relocate.  The JDR court entered a March 16, 2021 order incorporating the temporary custody agreement.

Mediation was not successful.  Moreover, less than two months after entering the temporary agreement, mother told father in emails that there was "no order" controlling custody

- 14 -

because he had not participated in mediation in good faith, a new "best interests" analysis was required, and that she would not be returning O.C. to Virginia unless father "agreed to something . . . different." Although mother's email referenced that father may be moving to Georgia or Texas, father denied that he had seriously entertained such a move, and he testified that he had never threatened to take O.C. out of Virginia. Moreover, leveraging father's desire to have O.C. for a planned birthday party, mother tried to convince father to sign a "one-week mini agreement" that he would return O.C. to Maine after exercising a week of visitation.

On May 15, 2021, mother did not return O.C. to father in Virginia as she was required to do by the March 16, 2021 JDR court order. Instead, she emailed father to inform him that she had filed for an emergency custody order in Maine. She also refused to return O.C. to Virginia in the ensuing days, telling father that he had no basis to believe that O.C. would "attend school in Virginia in the fall." Moreover, she repeatedly pushed for father to agree to a "mini" agreement that would allow a Maine court to exercise jurisdiction over O.C.

On May 7, 2021, a week before she refused to return O.C. to Virginia, mother registered the JDR court's March 16, 2021 order with a trial court in Maine. She also petitioned a Maine court to modify the custody arrangement or, alternatively, issue a temporary emergency custody order. After receiving notice of the Maine litigation, father filed an emergency motion for modification of custody and visitation in Virginia. After a hearing on June 1, 2021, the Loudoun JDR court entered an order requiring mother to return O.C. to father and directing any law enforcement officer who "comes in contact" with O.C. to "take [him] into custody and deliver [him] to" father.

Father registered the JDR court order in Maine "to be enforceable" and, on the weekend of June 19-20, 2021, personally travelled to Maine to "pick up" O.C. He "knocked on [mother's] door," and O.C. opened it and gave him a "big hug," but mother refused to relinquish O.C. and,

- 15 -

instead, gave father a "no trespassing notice."  The next Monday, June 21, 2021, she obtained a temporary protective order against father in Maine, giving her "temporary sole parental rights of [O.C.]."[7]  Her written "narrative" supporting the temporary protective order alleged that father had "slammed" her front door open and entered her house without permission.  She alleged that he was "an addict and an alcoholic" and that he told her he was taking O.C. to Georgia or Texas.[8]  Further proceedings on the temporary protective order were delayed because mother was an attorney in Maine, and it was difficult to find a judge who could hear the case.  But after hearings in August and November 2021, a Maine court denied mother a permanent protective order and dissolved the temporary order, finding that she had "failed to prove that [father] abused/harassed [her]" as those terms are defined under Maine statutes.

In addition, also in November 2021, a Maine judge issued an order finding that Virginia, not Maine, had jurisdiction to litigate custody matters regarding O.C.  The Maine judge's order registered the June 1, 2021 JDR court order, as if it had been entered in Maine.  Accordingly, father contacted the Maine police to see if they would help him regain physical custody of his son, but they would not.

Subsequently, mother requested another protective order on the basis that father was "training [O.C.] to murder her."  In December 2021, a Maine court granted a protective order for mother, but not for O.C., and the order required the parties to comply with the Virginia JDR court's March 16, 2021 order.  At trial, father denied that he was "teaching [O.C.] to shoot guns because [mother] cripple[d] [father] financially."  He explained that mother, to promote that false claim, was isolating two text messages he had sent her from their original context and combining

---

[7] The court denied a temporary protective order for O.C. against father.

[8] At trial, father denied that he had "broke into" mother's home and "tried to take [O.C.]"; instead, he arrived and asked mother "to abide by the court's order that [he] had in [his] hand."

them to imply that he was threatening her. Moreover, he introduced the relevant text messages into evidence, which demonstrated that father was not threatening mother but rather lamenting that litigation was financially costly and had prohibited him from buying a house or a dog.

Because father could not regain physical custody of O.C., he filed a rule to show cause against mother in Virginia, alleging that she had withheld O.C. from him in violation of the March 16, 2021 custody and visitation order and had enrolled him in school in Maine without consulting with him. Mother, however, did not appear at the hearing on the show cause order. Then, after nine months without seeing O.C. and fearing he would never see his son again, father reluctantly asked the Virginia State Police for help, and they charged mother with a felony.[9]

Father was reunited with O.C. in February 2022, nine months after mother was ordered to return O.C. to him, and the custody, visitation, and show cause matters proceeded to a trial in the JDR court. Mother, however, did not attend the JDR trial and instead filed additional pleadings in Maine and Prince William County, Virginia, alleging that father was "training" O.C. to murder her and was an alcoholic, drug addict, and in "poor physical health." She also accused father of "committing fraud upon the court."

Since father had regained custody of O.C., their relationship was "good" and "close." They shared lots of jokes, hugs, games, and outside time. Father also provided O.C. with advice, listened to his problems, and taught him how to "work through things." Father helped O.C. with his homework and read books with him. Moreover, under father's care, O.C. had good relationships with family on "both sides," including mother's parents and siblings. Indeed, father had specifically facilitated calls between O.C. and mother's family.

Father acknowledged that a bond condition in mother's criminal matter prohibited her from contacting O.C. Nevertheless, the criminal court amended mother's bond at father's

---

[9] The criminal matter was set for a preliminary hearing at the time of trial.

request, and father offered supervised contact between O.C. and mother consistent with a therapist's recommendations, but mother had refused. Moreover, mother told father that she would "never coparent" with him and that "dads don't get custody." She told him that he "should do the world a favor and kill [himself]."

Father did not think he could resolve disputes with mother, who was "unreasonable in almost every instance" and did not honor her word even when it was in writing and filed in a court. He cited a 2021 incident where mother threatened to "show cause" him after he scheduled an annual doctor's appointment for O.C., claiming that father was attempting "to establish jurisdiction" in Virginia. Father was concerned because mother had made numerous accusations against him, "file[d] extensively in courts in separate states," and persistently attempted to keep O.C. away from him. Father was also concerned about mother's odd, erratic, and false statements during discovery, including her allegations that he had "dementia," had shrunk four inches, and looked "very tiny and . . . sick."

The circuit court qualified Dr. Stacey Hoffmann as an expert in "child clinical and forensic psychology," particularly in "reunification assessment therapy." She described reunification therapy as targeting "factors that have contributed to the development and maintenance" of a "challenge[] or rupture in [a] relationship" between parent and child and recommending steps to "move forward in a . . . healthy manner." Dr. Hoffmann began reunification therapy with O.C. in February 2022 upon his return to father's custody, understanding that father had not seen O.C. since May 2021. During that time, O.C. had been "exposed to a lot of information and circumstances that . . . contributed to a lack of trust on his part and questioning the extent to which his father was a reasonable, rational caregiver that could take care of him properly."

Dr. Hoffmann intended to address that circumstance and reunify the "whole family." Dr. Hoffman met with O.C. and father about ten times but could only arrange a single phone call with mother, as she did not want to participate in the therapy. Father had cooperated with Dr. Hoffman, incurring $12,442 in fees and costs, but mother had not participated.

Dr. Hoffmann believed that O.C. needed continued therapy as reunification had not been achieved. She noted that O.C. had not seen mother since March 2022, was "anxious" and "worried," and recently had adjusted to "dramatically different circumstances." He needed a "therapeutic plan that incorporate[d] both parents" and helped him overcome feelings of "guilt, as if some of these things [were] his fault." Dr. Hoffmann believed that given that O.C. "require[d] structure and predictability," he should stay with father and that "reunification" with mother should be "gradual." Dr. Hoffmann was aware of the allegation that father had been "training" O.C. to murder mother, but Dr. Hoffman denied that O.C. had displayed any indication that he would "shoot" mother.

James C. Munch, a Maine attorney, testified that he represented father in the Maine "parental rights" and "protection from abuse" actions and that father had incurred $42,845.55 in attorney fees from that litigation. In addition, father had incurred $57,679.39 in attorney fees from the present litigation in Virginia. Mother objected to the affidavit representing father's Maine attorney fees, arguing that the circuit court did not have "jurisdiction to award attorney's fees in Maine when they [had been] denied in Maine." The circuit court "provisionally" overruled the objection "subject to argument at the conclusion of the case," noting that mother had not provided any authority supporting her argument and that it wanted the parties to "give [it] the authority" before it ruled on the objection.

After the close of father's evidence, mother, proceeding *pro se*, testified that father was granted "50/50 custody" of O.C. in 2017 but "never took it." Then, in May 2021, while the

March 16, 2021 JDR court order was in effect, father was talking about moving to Georgia or Texas. Because of those statements, mother believed that father had violated the JDR court order, which required 30 days' notice before any change of address, and that the order was therefore "void." Consequently, mother "filed in Maine" believing they would now litigate there.

Mother testified that she believed the temporary protective order the Maine court entered on June 21, 2021, awarded her custody of O.C. because it provided that she would have "temporary sole parental rights and responsibilities" of O.C. She testified that the Maine court's November 2021 protective order also awarded her "sole legal and physical custody" and that the December 17, 2021 order which awarded her a permanent protective order (on her second try) "gave [her] week on/week off" custody by incorporating the March 16, 2021 JDR court order. She maintained that when she "reached out" to effectuate the custody provisions of the protective order, father "refused" and instituted "false criminal" charges against her.

During their respective testimonies, father asked the court to grant him sole legal and primary physical custody of O.C., appoint Dr. Hoffmann as a court-ordered therapist, order mother to reimburse him for the fees he has paid Dr. Hoffmann, and award him attorney fees. He also asked the circuit court to hold mother in contempt of court for violating the March 16, 2021 JDR court order. By contrast, mother asked the court to grant her primary physical custody or, alternatively, to enforce the terms of the Maine protective order, which she contended gave her "week on/week off" custody, while they litigated "a new order in Maine."

The circuit court did not hear oral argument after the close of the evidence but ordered the parties to order transcripts of the trial and file proposed findings of fact and conclusions of law for the court to consider. After the parties filed their written closing pleadings, the circuit court issued a letter opinion finding that the evidence demonstrated a material change in

circumstances since the last custody award because (1) mother had initiated custody litigation in Maine "despite a Virginia custody order and the child rightfully being a Virginia resident," and (2) mother had withheld O.C. from father in Maine despite father's "right to have the child returned to effectuate the Virginia custody order."

The court then analyzed each of Code § 20-124.3's factors for determining the best interests of a child in custody disputes. In relevant part, the court found that both parents had a "positive and caring relationship" with O.C., but that father "articulated the role of a parent much more effectively than did the mother," whose testimony was "focused . . . on seeking to make the father out as the villain responsible for every circumstance in which [she felt] wronged." The circuit court concluded that mother's "attitude does not well meet the emotional needs of a child." The court also found that mother did not actively support O.C.'s contact with father. It ruled that her reason for withholding O.C. from father in May 2021 in violation of the March 16, 2021 JDR court order—"that the custody order then in effect was 'void' because the father expressed an intent to move to Georgia or Texas"—was " unsupported by the evidence" and "an unlawful and unjustifiable reason to withhold the child." Indeed, mother "took the law into her own hands," demonstrating "her inability to support [O.C.'s] relationship" with father. The circuit court also found that "[t]here was no persuasive evidence of family abuse as that term is defined" in Code § 16.1-228. The court acknowledged that "[t]here was evidence as to protective orders," and although mother testified that father was trying to teach O.C. to murder her, the court found those allegations were not "supported by persuasive evidence." Thus, after balancing all of the factors, the circuit court awarded father "sole legal" and "primary physical" custody of O.C. The court also ordered that O.C.'s "contact" with mother be under a "reunification protocol."

Next, turning to father's show cause petition, the circuit court found that mother had violated several orders, most notably the March 16, 2021 JDR court order. The court emphasized that mother violated the March 16, 2021 JDR court order "by withholding [O.C.] from the father and refusing to return [O.C.] to Virginia." Because there was no objectively reasonable basis for withholding O.C. from father as required by the order, the court found mother in contempt but did "not sanction" her "beyond a consideration of attorney[] fee reimbursement."

Finally, the circuit court awarded father $45,000 "as partial reimbursement of [his] attorney[] fees." The court noted that it had "considered the substance of its rulings" above and father's attorney's "affidavit of fees," which provided that father had incurred $57,679.39 in attorney fees for the custody and show cause litigation. The court found that father had "substantially prevailed" and that, "had the mother not violated" the March 16, 2021 JDR court order, "this entire litigation would have been unnecessary." Mother appeals, arguing that the circuit court erred by holding her in contempt, by finding that there was no evidence of family abuse, and by awarding father attorney fees without specifying that none of the fees awarded were incurred in the Maine litigation.

### B. Contempt

"A court has discretion in the exercise of its contempt power." *Petrosinelli v. PETA*, 273 Va. 700, 706 (2007). Moreover, circuit courts have the authority to interpret their own orders on which a contempt finding is based, although that interpretation "must be reasonable." *Roe v. Commonwealth*, 271 Va. 453, 457-58 (2006). Nevertheless, "[b]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied." *DRHI, Inc. v. Hanback*, 288 Va. 249, 255 (2014) (quoting *Petrosinelli,* 273 Va. at 707). Indeed, "'[f]or a

proceeding in contempt to lie,' there 'must be an express command or prohibition' which has been violated." *Id.* (quoting *Petrosinelli*, 273 Va. at 707). And there must be "no objectively reasonable basis for concluding that the . . . conduct might be lawful." *Taggart v. Lorenzen*, 587 U.S. 554, 557 (2020). "These principles arise from the recognition that the 'judicial contempt power is a potent weapon.'" *DRHI*, 288 Va. at 255 (quoting *Petrosinelli*, 273 Va. at 706).

Here, the record demonstrates that the parties entered a temporary custody order for the summer of 2021 so that mother could pursue a career in Maine. That agreement established "week-on, week-off" visitation in Virginia and Maine and was incorporated into the JDR court's March 16, 2021 order. Moreover, the agreement explicitly provided that if the parties could not reach a permanent agreement by the end of the summer, the prior custody orders would resume effect, which contained an alternating custody schedule, and O.C. would be returned to Virginia, where he would attend school.

Nevertheless, on May 15, 2021, mother did not return O.C. to Virginia as she was plainly obliged to do under the above agreement and, instead, insisted that the agreement and JDR court order was void because father had discussed possibly moving to Georgia or Texas. Thus, mother believed that she did not have to return O.C. and could instead pursue litigation in Maine, which she did.

Yet, as the circuit court found, mother's position finds no support in the temporary agreement, and her rationale for not returning O.C. was "unjustifiable." The temporary agreement provided that its terms were contingent on father "continuing to reside in Northern Virginia," which he did. Moreover, the agreement provided that if father moved, or filed notice of an intent to move, then the provisions limiting jurisdiction to Virginia would be nullified. Father, however, never moved; nor did he file notice of an intent to move. Rather, he allegedly spoke, "not seriously," about potentially moving to Texas or Georgia. Such talk, without father

- 23 -

actually moving or filing notice of an intent to move, did not "void" the agreement, nor did it relieve mother of her clear obligation to return O.C. to Virginia on May 15, 2021. Consequently, when she failed to do so, mother violated her unambiguous obligation under the JDR court's March 16, 2021 order without an objectively reasonable basis for believing that her conduct may be lawful.

Notwithstanding the above, mother maintains that the circuit court erred by finding her in contempt because it failed to consider the Maine protective orders, which awarded her sole emergency custody in Maine. She maintains that the circuit court had to give those orders, which were registered in Virginia, "full faith and credit" and that the orders provided her with a reasonable basis for not returning O.C. to father in Virginia. The record establishes, however, that the first protective order (a temporary order that was not extended) was not entered until June 21, 2021, over a month *after* mother violated the JDR court's March 16, 2021 order. Thus, neither that protective order nor the subsequent protective orders could provide a reasonable basis for mother to believe that she did not have to return O.C. to father on May 15, 2021, and the circuit court did not err by holding her in contempt for failing to do so.

### C. Custody

"We review a [circuit] court's decision regarding child custody for an abuse of discretion." *Armstrong v. Armstrong*, 71 Va. App. 97, 102 (2019). We will not retry the evidence or substitute our view of the facts for the circuit court's. *Id.* Rather, "[i]f 'evidence in the record supports the trial court's ruling and the . . . court has not abused its discretion, its ruling must be affirmed on appeal.'" *Id.* (quoting *Brown v. Brown*, 30 Va. App. 532, 538 (1999)). Generally, an abuse of discretion occurs when a circuit court does not consider a relevant factor, considers and gives significant weight to an irrelevant or improper factor, or

commits a clear error of judgment in weighing and considering all of the proper factors. *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 252-53 (2017).

The child's "best interests" is the "paramount concern" in custody disputes. *Vissicchio v. Vissicchio*, 27 Va. App. 240, 246 (1998) (quoting *Farley v. Farley*, 9 Va. App. 326, 327-28 (1990)). Moreover, a court "shall consider" all the statutory factors in determining the "best interests of a child" for custody and visitation. Code § 20-124.3. "Failure to consider all the factors set out in Code § 20-124.3 is reversible error." *Armstrong*, 71 Va. App. at 104. The court, however, need not "quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." *Id.* (quoting *Sargent v. Sargent*, 20 Va. App. 694, 702 (1995)). "Where the record contains credible evidence in support of the findings made by [the] court, we may not retry the facts or substitute our view of the facts for [that] of the trial court." *Id.* at 105 (alterations in original) (quoting *Bedell v. Price*, 70 Va. App. 497, 504 (2019)).

Mother does not claim that the circuit court failed to consider each of the statutory factors. Rather, she argues that the circuit court abused its discretion by finding that "there was no persuasive evidence of family abuse." She maintains that the circuit court "failed to consider a relevant factor" in reaching that conclusion—namely, "the findings from the protection from abuse orders from Maine" that father posed a "credible threat to" her "physical safety."

The record, however, belies mother's argument and contains credible evidence supporting the circuit court's conclusion. To begin, the court explicitly stated that it had considered the relevant Maine protection orders. Two of those orders, however, were temporary orders and the record does not have a detailed description of what facts and circumstances the Maine court found to justify the permanent protection order in December 2021. Further, mother claimed that the protective order was extended not because of "death threats," but because father had made a false police report to the Virginia State Police. Moreover, although the circuit court

acknowledged that mother had made an "alarming allegation" that father was teaching O.C. to "murder her," father vehemently denied the allegation and admitted the relevant text messages into evidence on which mother based her conclusion. Those text messages demonstrate that father was talking about mother's persistent litigation, not his allegedly "unsecured guns," when he said that she did her "very best to cripple [him] financially." Based on those circumstances, the circuit court found that mother's allegation, too, was not supported by "persuasive evidence." Thus, the circuit court's finding is supported by credible evidence, and we will not disturb it or substitute our view of the facts for the circuit court's.

Notwithstanding the above, mother maintains that the circuit court was required to "give full faith and credit" to the Maine protective orders, especially the December 2021 order that found that father posed a "credible threat to the physical safety of" mother. Indeed, she asserts that in the Maine litigation, it was "conclusively established" that father issued "death threats" against her and the circuit court was required to reach the same conclusion. To the extent mother is arguing that the Maine protection orders were binding on the circuit court under res judicata principles and that father could not therefore relitigate the issue of "family abuse" in the context of this custody proceeding, that argument is not preserved for appeal.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not

just any objection will do.  It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Generally, a party may preserve an error in a written objection *on* a final order or submitted to a circuit court *before* entry of the order.  *See* Code § 8.01-384(A) (providing that "[a]rguments made at trial via . . . recital of objections *in* a final order . . . unless expressly withdrawn or waived" are preserved (emphasis added)); *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 56 n.4 (2008) (holding that an objection was preserved when it was submitted "in the written objections submitted to the court *prior to* the entry of the final order" (emphasis added)).  But it remains a party's obligation to raise an objection to the trial court at a time when it can rule on the objection and then to obtain such a ruling.  *Bethea*, 297 Va. at 743; *Schwartz v. Commonwealth*, 41 Va. App. 61, 71 (2003).  Thus, when a party fails to obtain a ruling on a matter presented to a trial court, there is "no ruling to review on appeal."  *Schwartz*, 41 Va. App. at 71.

Consistent with those principles, we have held that written objections filed weeks *after* the final order was entered "are not regularly sufficient to comply with Rule 5A:18." *Eisenberger v. Eisenberger*, No. 2549-95-2, slip op. at 2 n.1 (Va. Ct. App. Nov. 19, 1996).  *See also Botos v. Botos*, No. 1015-21-3, slip op. at 10 (Va. Ct. App. April 19, 2022) (finding that a written objection "filed two days after the entry of the final order" was not timely and did not preserve the issue for appeal under Rule 5A:18).[10]  That is, even written objections to a final order must "present the circuit court with an opportunity to intelligently rule on his objections[,]" and if not, any "arguments with respect to . . . assignments of error" based on these objections

---

[10] Unpublished opinions may be cited as persuasive authority.  Rule 5A:1(f).

- 27 -

"[a]re not preserved for appellate review under Rule 5A:18." *Coe v. Coe*, 66 Va. App. 457, 469 (2016).

Here, the circuit court did not hear oral argument after the close of all the evidence and instead directed the parties to file written pleadings containing their proposed findings of fact and conclusions of law. In mother's written pleading, she argued that the circuit court had to give "full faith and credit" to the Maine protective orders under Code § 16.1-279.1(F) and 18 U.S.C. § 2265. Those statutory provisions, however, provide that a protection order in another state must be *enforced* by a foreign state, and the present action is not one to enforce a protective order, but to determine custody. Thus, mother's written pleading did not argue that res judicata principles prohibited the circuit court from retrying the factual issue of whether father abused her or that the circuit court was bound to the Maine court's factual findings, so that distinct legal argument is not preserved for appeal. *See Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc) (holding that "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review").

Notwithstanding the above, two weeks *after* the circuit court entered its final custody order, mother filed written objections to the custody order, arguing that father "is precluded from relitigating the issue of abuse as he attended the hearing on the Protective Order" in Maine "and was a party to the action." Although those written objections asserted that father was "bound" by the Maine court's finding on abuse, they were not timely as mother filed them weeks after the circuit court had ruled. *Eisenberger*, slip op. at 2 n.1. Moreover, the record fails to demonstrate that the circuit court ruled on the untimely objection, so there is nothing for us to review on appeal. *Schwartz*, 41 Va. App. at 71.

D. Attorney Fees Below

"This Court reviews an award of attorney's fees for an abuse of discretion." *Koons v. Crane*, 72 Va. App. 720, 742 (2021). Indeed, "[c]ircuit courts have broad statutory authority to award attorney fees in a domestic relations matter." *Yazdani v. Sazegar*, 76 Va. App. 261, 272 (2022). Nevertheless, "[t]he award must be reasonable 'under all of the circumstances revealed by the record.'" *Id.* at 273 (quoting *Sobol v. Sobol*, 74 Va. App. 252, 288 (2022)). "When a party unnecessarily prolongs litigation, it increases the amount of attorney fees the other party incurs and is a relevant factor for a trial court to consider in awarding attorney fees." *Id.* at 273-74.

In addition, when a "prevailing party [is] entitled by law to an award of attorney fees[,] [he] has the burden of proving 'that the requested fees are reasonable and that they were necessary.'" *Mills v. Mills*, 77 Va. App. 543, 565 (2023) (quoting *Moncrieffe v. Deno*, 76 Va. App. 488, 497 (2023)). *See also Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (1998) ("The party claiming the legal fees has the burden of proving . . . that the fees are reasonable and were necessary."). The Supreme Court has "identified seven non-exclusive factors for courts to consider when weighing the reasonableness of an amount of attorney fees":

> (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate.

*Denton v. Browntown Valley Assocs.*, 294 Va. 76, 88 (2017) (quoting *Lambert*, 293 Va. at 254). The circuit court, however, "is not required to consider all of the factors . . . in every situation," and a "'particular factor[] may have added or lessened significance depending on the circumstances of each case.'" *Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 298 Va. 310, 334 (2020) (quoting *W. Square, LLC v. Commc'n Techs.*, 274 Va. 425, 434 (2007)).

Mother argues that the circuit court abused its discretion by failing to evaluate father's "claimed fees under" the above factors. She insists that the circuit court needed to specify how much of the fee award arose from the contempt finding, the Virginia litigation, and the Maine litigation. She asserts that father's fee affidavit included fees that he incurred in the Maine litigation and that the court could not award those fees because he was not the prevailing party in Maine.

The record demonstrates, however, that the circuit court did not award father attorney fees he incurred in Maine. Rather, the court specifically noted that father had incurred $57,679.39 in attorney fees in the Virginia litigation, without referencing the Maine fees, and then awarded him only $45,000 of those fees. Moreover, in explaining its decision, the circuit court noted that mother had unnecessarily caused this "entire litigation" in Virginia, on which father had "substantially prevailed." And the circuit court's judgment was based in part on its finding that mother was in contempt for violating an order in the *Virginia* litigation. Thus, the circuit court properly considered the relevant factors, and mother has failed to demonstrate any abuse of discretion.

### E. Attorney Fees on Appeal

Both parties request that this Court award them attorney fees incurred in this appeal. "Such awards are governed by Rule 5A:30." *Sobol*, 74 Va. App. at 290. "In determining whether to make such an award, this Court is not limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but may consider all the equities of the case." Rule 5A:30(b)(2)(C). "Thus, unlike our review of attorney fee awards made by trial courts, the question of attorney fees on appeal is committed to our discretion based upon our consideration of all of the pertinent facts and circumstances." *Sobol*, 74 Va. App. at 290. After

considering the parties' arguments and the entire record in this case, we decline their requests for attorney fees.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed in Record Number 0556-23-4. And the circuit court's judgment is reversed in Record Number 0448-24-4, and the case is remanded only for entry of a new nunc pro tunc order that adds the missing record numbers to the March 24, 2021 order, without changing the date that order was entered. The rest of the circuit court's rulings and judgments related to custody, contempt, and attorney fees are affirmed.

*Affirmed, Record No. 0556-23-4.*

*Reversed and Remanded, Record No. 0448-24-4.*